**Jane M. WOOLDRIDGE,**
**Plaintiff–Appellant,**

v.

**MARLENE INDUSTRIES**
**CORPORATION, et al.,**
**Defendants–Appellees.**

No. 87–6132.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 12, 1988.

Decided May 18, 1989.

Rehearing and Rehearing En Banc
Denied July 6, 1989.

Robert L. Bertram, Bertram and Wilson, Jamestown, Ky., M. Gail Wilson, John F. Sherlock, III (argued), Donald F. Mintmire, Barnett & Alagia, Washington, D.C., for plaintiff-appellant.

Hollis E. Edmonds, Russell Springs, Ky., Charles Hampton White (argued), Nashville, Tenn., for defendants-appellees.

Before MERRITT and RYAN, Circuit Judges, and POTTER, District Judge [*]

JOHN W. POTTER, District Judge.

Plaintiff-appellant Jane M. Wooldridge appeals from the district court's determination that the maternity leave policy in effect in defendant-appellee Marlene Industries Corporation's apparel manufacturing plants in North and South Carolina was not unlawful. We find the district court's determination is not clearly erroneous and affirm as to this issue. Plaintiff-appellant also contends that the district court erred in adopting the special master's report on the issue of damages. Because we find the district court applied incorrect legal principles in the damages phase, we reverse in part and remand for further consideration.

Appellant filed this action on February 4, 1976 alleging that her employer, defendant-appellee Russell Sportswear Corporation, a subsidiary of Marlene Industries Corporation, was discriminating against female employees by maintaining a mandatory maternity leave policy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The district court initially ordered that the action be maintained as a class action on behalf of appellant and all other present and past female employees of Marlene Industries Corporation who had been compelled to take pregnancy leaves from their employment at five specified locations in Kentucky and Tennessee since

[*] The Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation.

February 4, 1971. Approximately two months later, in consideration of the applicable statute of limitations, the class description was amended by consent to limit the class to those female employees compelled to take a pregnancy leave since October 17, 1973. The case proceeded to trial in February and March, 1981. The court entered its findings of fact and conclusions of law on April 10, 1981.

The district court found that a mandatory maternity leave policy which violated Title VII had been in effect at the Kentucky and Tennessee locations during the period October 17, 1973 through October 17, 1975. A United States Magistrate was appointed to serve as special master for the purpose of determining the amount due each member of the class as damages. The special master conducted hearings on damages for 130 class members from September through December, 1981. By separate order entered April 10, 1981, the district court expanded the plaintiff class to include employees of Marlene Industries working at plants in North and South Carolina. In May, 1983 the district court conducted a second trial to determine whether an unlawful policy had been in effect in the North and South Carolina plants. The court entered findings of fact and conclusions of law dated May 13, 1985 holding that the maternity leave policy in effect in the North and South Carolina plants did not violate Title VII.

The special master filed his report on September 3, 1986. The master's report adopted the defendants' proposed findings of fact and conclusions of law in their entirety, recommending a schedule of payments to the named class members in the total amount of $30,011.42. All parties filed objections to the master's recommendation. The objections were considered by the court in its memorandum opinion entered September 11, 1987, adopting the master's report and recommendation. The district court entered its final judgment on September 11, 1987, from which this appeal is taken.

Appellant contends that the district court's finding, that the maternity leave policy in effect in Marlene Industries' North and South Carolina plants did not violate Title VII, is clearly erroneous. The applicable standard of review is set forth in *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

Although the meaning of the phrase "clearly erroneous" is not immediately apparent, certain general principles governing the exercise of the appellate court's power to overturn findings of a district court may be derived from our cases. The foremost of these principles, as the Fourth Circuit itself recognized, is that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 [68 S.Ct. 525, 542, 92 L.Ed. 746] (1948). This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo.*" *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123 [89 S.Ct. 1562, 1576, 23 L.Ed.2d 129] (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *United States v. Yellow Cab Co.,* 338 U.S. 338, 342 [70 S.Ct. 177, 179, 94 L.Ed. 150] (1949); see also *Inwood Laboratories, Inc. v. Ives Laboratories,*

*Inc.,* 456 U.S. 844 [102 S.Ct. 2182, 72 L.Ed.2d 606] (1982).

. . . . .

When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said. See *Wainwright v. Witt,* 469 U.S. 412 [105 S.Ct. 844, 83 L.Ed.2d 841] (1985). This is not to suggest that the trial judge may insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination. See, *e.g., United States v. United States Gypsum Co., supra,* [333 U.S.] at 396 [68 S.Ct. at 542]. But when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

*Id.* at 573–575, 105 S.Ct. at 1511–1513.

■ Appellant claims the district court's finding as to the North and South Carolina plants is clearly erroneous on the grounds that it is contrary to the evidence and because it is internally inconsistent. Neither ground is well taken. In support of her claim that the finding of no unlawful maternity leave policy is contrary to the evidence presented at trial, appellant has offered vignettes from the testimony of five witnesses. Appellant also contends that the testimony of the witnesses is corrobo-

rated by a large number of documents placed in evidence at the trial.

This Court has thoroughly reviewed the entire trial transcript, of which the excerpts relied upon by appellant are but a small portion. The trial judge's finding was based on his decision to credit the testimony of defendant's witnesses as being persuasive of the ultimate finding. The trial judge concluded the evidence did not support finding that a mandatory leave policy had been enforced by defendant in the North and South Carolina plants. The judge's conclusion is entirely plausible in light of the record.

■ Appellant also contends the district court's April 10, 1981 finding, that mandatory maternity leave was eliminated in the Kentucky and Tennessee plants as of October 17, 1975, is clearly erroneous. Appellant claims that evidence presented at the damage hearings before the special master demonstrates the policy was in effect after October 17, 1975. Although there is evidence supporting appellant's contention, it is not so compelling that we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Also, the trial before the district court on the issue of liability was held during February and March of 1981. The damages evidence was heard by the special master during the months of September through December of 1981. The evidence upon which appellant relies was not placed in evidence before the district judge at the time he issued his findings of fact and conclusions of law. Accordingly, this Court will not consider it in determining whether the district court's finding was clearly erroneous. Appellant has presented no other argument as to why the district court's determination that the mandatory leave policy was not in effect after October 17, 1975 should be found to be clearly erroneous, and the order will be affirmed on this issue.

The remaining issues in this appeal arise from the special master's report and recommendation awarding damages to the class

members employed in the Kentucky and Tennessee plants. The broad outline of the sequence of events is set forth above. At the close of the hearing to determine whether an unlawful policy existed in defendants' Kentucky and Tennessee plants, the parties consented to the appointment of a special master to hear and determine the issue of damages. The district court made the following order on April 10, 1981:

> In accordance with the Memorandum of even date, it is ORDERED that U.S. Magistrate W. David King be and is appointed as a Special Master upon consent of all parties, pursuant to Rule 53(b), Federal Rules of Civil Procedure, and 28 U.S.C. § 636(b)(2), to hear and determine the issues of damages for members of the class for the plants located in Russell Springs and Liberty, Kentucky and Hartsville, Decaturville and Westmoreland, Tennessee, and to file a Report with the Court pertaining to his findings, so that judgments might be entered accordingly.

The special master issued a report adopting defendants' proposed findings and conclusions, which was objected to by appellant. Appellant requested the district court to conduct a *de novo* review of the matters before the special master. The district court refused to review the master's report *de novo* and considered it under the clearly erroneous standard.

■ Appellant mistakenly contends that the district court erred in not conducting a *de novo* review of the special master's findings of fact and conclusions of law. "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous." Fed.R.Civ.P. 53(e)(2). "A magistrate is subject to this rule only when the order referring a matter to the magistrate expressly provides that the reference is made under this Rule." Fed.R.Civ.P. 53(f). "A magistrate may be designated to serve as a special master, *with consent* of the parties, even though *no exceptional condition* requires it. 28 U.S.C. § 636(b)(2); F.R.Civ.P. 53(b). The scope of review is the 'clearly erroneous' standard. F.R.Civ.P. 53(e)(2)." *Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952,

954 (6th Cir.1985), *cert. denied,* 479 U.S. 830, 107 S.Ct. 116, 93 L.Ed.2d 63 (1986). Appellant's reliance on 28 U.S.C. § 636(b)(1) and the authorities construing that section are inapplicable here. The district court did not err in reviewing the special master's findings of fact and conclusions of law under the clearly erroneous standard.

■ The next issue on appeal is whether the district court erred in adopting the special master's report as its order. The master's report, filed September 3, 1986, recommends to the court that the proposed findings of fact and conclusions of law submitted by defendants be adopted in their entirety. The report of the special master "finds that the proposed report of the defendant Marlene Industries, etc., et. al. accurately reflects the Special Master's analysis of the testimony and exhibits received at the hearings before the undersigned and his findings of credibility." The report incorporates defendants' proposed report and damage schedule by reference. Appellant argues that the master's findings of fact and conclusions of law should receive a higher level of scrutiny than the clearly erroneous standard because they were prepared by a party to the litigation.

Although courts have been criticized "for their verbatim adoption of findings of fact prepared by prevailing parties, ... our previous discussions of the subject suggest that even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous." *Anderson,* 470 U.S. at 572, 105 S.Ct. at 1510. The case on appeal here is further distinguishable in that all parties had equal opportunity to submit proposed reports for the special master's consideration and did so. The master had his choice of adopting one or the other, preparing his own findings independently, or any combination of these options. Verbatim adoption of proposed findings of fact and conclusions of law is not, in itself, clearly erroneous. "The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court." Fed.R.Civ.P. 52(a).

■ Appellant next contends that this case must be remanded to the district court because the court's conclusions of law do not clearly articulate the legal principles from which they were formulated. Specifically, appellant argues that the special master's report, adopted by the court in its order of September 11, 1987, is deficient in this regard. We believe the district court's conclusions are sufficient to meet the minimal requirements of Fed.R.Civ.P. 52(a). The court is not required to articulate in detail the legal principles from which its conclusions are drawn.

> F.R.Civ.P. 52(a) imposes a duty upon the District Court Judge, before whom a case is tried without a jury, to "find the facts specially and state separately its conclusions of law thereon." Rule 52 does not indicate how elaborately a judge should make his findings. The Advisory Committee Note states only that the District Court Judge shall make "brief, pertinent findings and conclusions upon the contested matters."

*Grover Hill Grain Co. v. Baughman–Oster, Inc.* 728 F.2d 784, 792 (6th Cir.1984). Focusing only on the district court's order of September 11, 1987 requires too narrow a reading of the record in regard to this issue. The district court's order on the damages phase of the proceeding must be read in conjunction with its order on the liability phase. The district court entered findings of fact and conclusions of law in the liability phase of this proceeding on April 10, 1981. The court concluded that defendants had maintained a maternity leave policy which "presumptively violates Title VII ..." and directed that "defendants provide back pay for those in the plaintiff's case who have or can show the loss of wages through the mandatory leave policy. 42 U.S.C. § 2000e–5(g)." These conclusions are sufficient to enable us to perform a meaningful review.

■ The remaining issues presented for review can be summarized for the purpose of analysis as questioning whether the district court applied the correct legal principles in its determination of damages. The order of reference, entered April 10, 1981, directed the special master to "determine what, if any, damages have been suffered by individual members of the class for mandatory maternity leave at plants of Marlene Industries Corporation, or its subsidiaries, between the dates of October 17, 1973, and October 17, 1975." The damages in this case consist solely of back pay for such period of time each class member was off work pursuant to the unlawful policy. It is conceded that all class members were off work for some medically mandated period of time incident to giving birth. Appellant contends that the district court misallocated the burden of proof in the damages phase of the proceedings. We are not bound by the clearly erroneous standard in our review of this issue.

> It is well-settled that the responsibility of factfinding is that of a district court, and that specific findings may not be set aside on appeal unless those findings are clearly erroneous. *Pullman–Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); Fed.R. Civ.P. 52(a). This deferential standard does not apply to conclusions of law, however, *see Pullman–Standard,* 456 U.S. at 287, 102 S.Ct. at 1789, or to factual findings which result from the application of incorrect legal principles. *See Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 855 n. 15, 102 S.Ct. 2182, 2189 n. 15, 72 L.Ed.2d 606 (1982).

*Haskins v. United States Department of the Army,* 808 F.2d 1192, 1197 (6th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 68, 98 L.Ed.2d 32 (1987).

We begin our review by setting forth the legal principles which describe the allocation of the burden of proof in the damages phase of a Title VII class action.

> [I]n so-called "pattern or practice cases," if the plaintiff can establish "that racial discrimination was the company's standard operating procedure," *see International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977), the burden of proof shifts to the defendant to show that in individual cases the hiring decision was not due to the discriminatory policy but to some other, legitimate consideration. *Id.* at 359, 97 S.Ct. at 1866. *See also Franks v. Bowman*

*Transportation Co.,* 424 U.S. 747, 772, 96 S.Ct. 1251, 1267, 47 L.Ed.2d 444 (1976); *Craik v. Minnesota State University Board,* 731 F.2d 465, 470–71 (8th Cir.1984).... the pattern or practice is in turn the crucial element in shifting the burden of persuasion to the defendant. *See id.* at 339, 359 & n. 45, 97 S.Ct. at 1856, 1867 & n. 45.

*Lujan v. Franklin County Board of Education,* 766 F.2d 917, 928–929 (6th Cir. 1985). "It further follows that if the district court makes a general finding of discrimination, the burden is upon the company to prove that qualified individual women who applied for available employment openings were rejected for nondiscriminatory reasons." *E.E.O.C. v. Monarch Machine Tool Co.,* 737 F.2d 1444, 1450 (6th Cir.1980) (citing *Franks v. Bowman Transportation,* 424 U.S. at 773 n. 32, 96 S.Ct. at 1268 n. 32). Appellees' argument that we should not apply the *Franks* and *Teamsters* rationale to a maternity leave case is unpersuasive. It is the existence of an unlawful pattern or practice which shifts the burden of proof to the defendant, not whether the discrimination occurs in hiring or at some other point during the employment relationship. The result, in any case, is exclusion from employment for an unlawful reason, which warrants the application of the same remedial principle.

The case before us on appeal is a case in which the district court determined that defendants had engaged in an unlawful practice affecting a class of individuals. Application of the principles discussed above is appropriate in this case and warrants that the burden of proof in the damages phase be borne by the defendants. The actual showing required of defendants is determined by the specific facts of a particular case. In this case defendants' burden is to prove that the unlawful policy was not applied in the particular instance of a class member claiming damages. Defendants have the burden or proving that a claimant's absence from work was attributable to a reason other than the unlawful reason. The district court's findings and conclusions in the damages phase of this case resulted from an incorrect allocation of the burden of proof. It is clear from the court's order, and undisputed by appellees, that the court improperly required the class members to prove their entitlement to back pay by a preponderance of the evidence. Accordingly, we must reverse the judgment of the district court with respect to the amount of damages awarded and remand for further proceedings, as will be more fully discussed below.

■ Merely to say that defendants have the burden of proof in the damages phase of this type case does not fully resolve the issues before us and will not greatly assist the district court as to how it must proceed on remand. It is also necessary that we set forth our view of the respective duties of each party in such a proceeding and state the standard of proof required of defendants. The latter issue has not been previously decided in this circuit. It has been raised in this appeal and will be an issue before the district court on remand.

> The Court began its analysis in *Teamsters* by noting that the liability phase establishes that the employer was a discriminator, and that the force of this proof at the liability phase remains everpresent when the Title VII remedy is determined. With such a background, the Court held, the employer cannot complain that "there is no reason to believe that its individual employment decisions were discriminatorily based," *id.* at 362, 97 S.Ct. at 1868.

. . . . .

> [V]ictims of discrimination are entitled to a presumption in favor of relief; because "recreating the past will necessarily involve a degree of approximation and imprecision," *id.* at 372, 97 S.Ct. at 1873, all doubts are to be resolved against the proven discriminator rather than the innocent employee.

*McKenzie v. Sawyer,* 684 F.2d 62, 77 (D.C. Cir.1982).

> Ordinarily, once it is shown at the first, or "liability" stage of a bifurcated class action, as it was here, that an employer has engaged in a pattern of illegal discrimination ... it is then presumed that individual ... decisions were infected by the discrimination and that victims of those decisions are entitled to make-

whole awards. All an individual plaintiff must then establish at the second or "back pay" stage of trial is (a) his indentity as one of the presumed discriminatees ... and (b) any information requested of him to assist the court in determining the amount of economic loss he suffered as a result. The burden then shifts to the employer to demonstrate by a preponderance of the evidence, if it can, that factors other than the condemned discrimination caused the decision of which the particular back pay claimant complains, ... If this burden is met compensation may be denied unless the claimant can show that the exculpatory reason advanced by the employer is mere pretense ...

*Sledge v. J.P. Stevens & Co., Inc.*, 585 F.2d 625, 637 (4th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979). The burden on a class member in the damages phase of a Title VII proceeding is to provide a statement setting forth facts which demonstrate that the individual is entitled to relief. *Pettway v. American Cast Iron Pipe Co.*, 681 F.2d 1259 (11th Cir.1982). The individual must show initially that she is within the class entitled to relief and available for work. *See Baxter v. Savannah Sugar Refining Corp.*, 495 F.2d 437 (5th Cir.), *cert. denied* 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974).

The initial burden on a victim of discrimination is not difficult to meet. It requires only that the individual produce facts showing she is a member of the class of individuals entitled to relief and provide the court with information from which her damages can be determined. On remand, each individual claimant must show initially that she was off work in connection with a pregnancy between October 17, 1973 and October 17, 1975 to establish her membership in the class. Upon doing so, the class member is only required to produce information sufficient to enable the court to determine the amount of back pay due her. Once the individual has fulfilled these requirements she is presumed to be entitled to the amount claimed unless the defendant can prove that her absence from work was due to some reason other than because of the unlawful practice.

The master's report, adopted as the court's order awarding damages, states at ¶ 5:

> During the course of the hearings, the women claiming to have been damaged by the application of the maternity leave policy, submitted affidavits in the form of questionnaires in which they answered certain questions propounded by counsel for the plaintiff. In the vast majority of the affidavits, the women indicated that they would have been able to work all of the time that they had been off except for one week during the time they were confined for giving birth to the child. The plaintiff offered no medical evidence to support these assertions.

We express no opinion as to whether the affidavits submitted are either legally or factually sufficient to meet an individual's burden of production. The sufficiency of the facts presented is a question of fact to be resolved in each case by the district court. This passage from the court's order illustrates the point that, regardless of the means by which it is made, the individual's assertion she would have worked the entire time except for one week would presumptively entitle her to back pay for all other time off in connection with her pregnancy. It is legal error for the court to require the class member to support her claim with medical evidence or deny relief on the ground that the claim was not supported by medical evidence.

At the evidentiary hearing, the defendants have the burden to prove that any period of lost time claimed was due to some reason other than the unlawful practice. Defendants must meet their burden in the case of each individual claimant. The special master concluded, on the basis of general medical evidence, that no claimant would have been physically able to return to work for a minimum of two weeks following the birth of a child. This conclusion is erroneous because the general nature of the evidence offered is not probative as to whether any particular individual was physically unable to work for either a shorter or longer period following the delivery of a child. Thus, such evidence would be insufficient as a matter of law to meet

the defendants' burden in any individual case. This is not to say that defendants cannot use medical evidence to meet their burden. Defendants have the right to question the fitness of any individual to perform work she claims she was available to perform. However, medical evidence admissible to show that an individual was physically unable to work during a period she claims she was available must necessarily be limited to evidence of the condition of the particular individual.

The district court also found that no class member had attempted to mitigate her damages, stating:

> Here, after the birth of the children, it is apparent that none of the employees who are seeking damages in this proceeding made any meaningful effort to obtain interim employment. The Special Master doubts that they could have obtained interim employment during the six-week period even had they chosen to do so which none testified that they did. Thus, after the birth of the child, the defendants would be penalized the full six weeks or full six months, as the witnesses variously testified, that they were off from work even though they made no effort to mitigate damages or satisfy their statutory obligations. As Justice O'Conner observed in *Ford Motor Co. v. EEOC*, 458 U.S. 219, 229, 73 L.Ed.2d 721, 102 S.Ct. 3057 [3064] (1972), "Since paying back pay damages is like paying an extra worker who never came to work ...," the Special Master is being asked to recommend damages for periods when the employees were not at work and made no effort to mitigate the defendants' losses. Thus, damages following the birth of the child are more punitive than compensatory because they would more than make the employee whole in view of their physical condition as the physicians testified. For this reason, and in view of the medical evidence offered together with common human experience, the Special Master did not award damages to any claimant for any period of absence following delivery.

Conclusions of Law at ¶ 2.

We have already discussed why the district court's reliance on the medical evi-

dence was erroneous. Additionally, the district court has applied incorrect legal principles in apparently requiring the employees to prove their efforts to mitigate their damages. The leading case on the subject in this circuit is *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614 (6th Cir.1983), *cert. denied* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). *See Ford v. Nicks*, 866 F.2d 865, 87 No. 88–5260 slip op. at 15 (6th Cir Jan. 30, 1989). Although *Rasimas* involved an individual action, it applies the duty to mitigate damages and the attendant burdens on the parties in the same context and phase of the proceedings as are before us here. Analytically, the issue of mitigation of damages is always considered after discrimination has been established and plaintiff has presented some evidence on damages. *Rasimas*, 714 F.2d at 623. Thus, there is no practical distinction between an individual action and a class action for the purpose of determining the issue of mitigation.

■ A person discriminated against must exercise reasonable diligence to earn amounts which will reduce any back pay allowable. 42 U.S.C. § 2000e–5(g). However, defendant has "the burden of producing sufficient evidence to establish the amount of interim earnings or lack of diligence" in mitigating damages on the part of plaintiff. *Rasimas*, 714 F.2d at 623. "The Defendant may satisfy his burden only if he establishes that: 1) there were substantially equivalent positions which were available; and 2) the claimant failed to use reasonable care and diligence in seeking such positions." *Id.* at 624 (citations omitted). Again, defendant must meet this burden in the case of each individual claimant. The district court erred in denying back pay on the basis of lack of mitigation because it failed to find first that substantially equivalent positions were available. It was also error to deny back pay to the entire class based on the special master's doubt that any claimant could have obtained interim employment. A claimant is not required to submit evidence of diligence and reasonable care in seeking employment until defendant has met its burden. *See Sprogis v. United Air Lines, Inc.*, 517 F.2d 387, 392 (7th Cir.1975). It

was error for the district court to deny all back pay for time off work after childbirth on the basis set forth in its order. On remand, the Court should award back pay in accordance with the guidelines set forth in *Rasimas*.

Finally, appellant has urged us to adopt the requirement that a defendant must meet its burden in the damages phase of these cases with the weight of clear and convincing evidence, rather than the customary preponderance of the evidence. Several circuits have imposed a clear and convincing proof requirement. *See Baxter v. Savannah Sugar Refining Corp.*, 495 F.2d 437, 445 (5th Cir.1974); *McKenzie v. Sawyer*, 684 F.2d 62, 77–78 (D.C.Cir.1982); *Marotta v. Usery*, 629 F.2d 615, 618 (9th Cir.1980); *Stewart v. General Motors Corp.*, 542 F.2d 445, 453 (7th Cir.1976), *cert. denied*, 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977). The Fourth and Eighth Circuits have rejected imposing a greater requirement. See *Sledge v. J.P. Stevens & Co., Inc.*, 585 F.2d 625, 637 (4th Cir.1978); *Craik v. Minnesota State University Board*, 731 F.2d 465, 470 at n. 8 (8th Cir.1984). *Craik* noted that "[t]he normal standard of proof in civil litigation is that of a preponderance of the evidence, and we do not believe that the public and private interests involved require altering that distribution of the risk of error between the litigants." *Id.*

We find it unnecessary to impose a clear and convincing proof requirement in this Circuit because our guidelines for back pay awards under Title VII have effectively shifted the risk of error in favor of the back pay claimant. We have held that back pay should always be awarded absent the existence of exceedingly rare special circumstances. *Rasimas*, 714 F.2d at 626. "Backpay should be awarded even where the precise amount of the award cannot be determined," with any ambiguities being resolved against the discriminating employer. *Id.* at 628. Where it is impossible to reconstruct the employment history of each claimant, back pay equal to the maximum amount which could have been earned but for the discrimination is appropriate. *Id.* Under these guidelines, Title VII claimants are well protected if the employer is re-

quired to meet its burden of proof by a preponderance of the evidence. An analogy can be drawn with the burden imposed on the employer to show that a claimant has failed to mitigate damages. The standard imposed on the employer should also be considered in relation to the showing required of the individual claimants. Requiring the employer to meet its burden by clear and convincing evidence is, in our opinion, unduly demanding relative to the claimant's minimal burden to produce information from which backpay can be calculated, particularly when one considers that the information produced by the claimant will likely consist of little more than her representation that she would have worked but for the employer's maternity policy.

Accordingly, the judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.