**Jane M. WOOLDRIDGE, Plaintiff-Appellee,**

v.

**MARLENE INDUSTRIES CORPORATION and Russell Sportswear Corporation, Defendants-Appellants.**

No. 88-5727.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1989.

Decided March 23, 1990.

Rehearing and Rehearing En Banc Denied May 24, 1990.

Robert L. Bertram, Bertram & Wilson, Jamestown, Ky., Donald F. Mintmire, John F. Sherlock, III (argued), Barnett & Alagia, Washington, D.C., for plaintiff-appellee.

Charles Hampton White (argued), Richard L. Colbert, Cornelius & Collins, Nashville, Tenn., Hollis E. Edmonds, Russell Springs, Ky., for defendants-appellees.

Before MERRITT, Chief Judge, KENNEDY, Circuit Judge, and McRAE, Senior District Judge.*

KENNEDY, Circuit Judge.

Defendants-appellants Marlene Industries Corporation and Russell Sportswear Corporation, Marlene's subsidiary,[1] appeal the District Court's award of $293,399.24 in Title VII attorneys' fees to the class representative in this class action sex discrimination suit. The suit was brought to challenge the defendants' maternity leave policy, which forced pregnant employees to take a leave of absence for a prescribed period before and after childbirth. The District Court found that the defendants did enforce a policy that violated Title VII,

but only at their plants in Tennessee and Kentucky, and only between October 1973 and October 1975. The District Court eventually approved a magistrate's award of $30,011.42 in backpay damages to 38 members of the class. No damages were awarded to the 93 other women—including Wooldridge—who made backpay claims, a decision that was subsequently reversed by a panel of this Court. Since the policy had been discontinued before the action was filed, the District Court did not order injunctive relief. In the instant appeal, the defendants argue that the attorneys' fees awarded by the District Court are excessive since: (1) much of the compensated time was used to litigate the damage claims of persons who were not "prevailing parties"; (2) the District Court did not adequately determine the reasonableness of the hours claimed by the class attorneys; and (3) the hours billed should have been reduced because of the limited number of persons who received backpay awards and because the attorneys' fees far exceeded the damages awarded. For the reasons set forth below, we REVERSE and REMAND for further proceedings.

## I. Background

In February 1976, plaintiff-appellee Jane Wooldridge filed suit against her employer, Marlene Industries, alleging that the corporation and its subsidiary discriminated against female employees by maintaining a mandatory maternity leave policy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.[2] Wooldridge brought the suit as a class action on behalf of all past and present employees forced to take pregnancy leave at five specific plants in Kentucky and Tennessee.[3]

---

* The Honorable Robert M. McRae, Jr., United States District Court for the Western District of Tennessee, sitting by designation.

1. For the sake of simplicity the defendants will be referred to as Marlene Industries.

2. Because of the limited nature of the questions presented by this appeal, only an abbreviated version of the facts in this case has been given. For a more detailed rendering of the facts, see *Wooldridge v. Marlene Industries Corp.*, 875 F.2d 540 (6th Cir.1989).

3. Wooldridge ultimately amended her complaint to include persons employed at plants in North and South Carolina. In a May 13, 1985 memorandum, the District Court determined that the defendants did not enforce an unlawful policy at these plants and accordingly denied relief. A panel of this Court affirmed this portion of the order. *Wooldridge*, 875 F.2d at 543. The District Court refused to award attorneys' fees for work done in the North and South

In consideration of the statute of limitations, the District Court limited the class to employees compelled to take maternity leave after October 17, 1973.

The District Court divided the litigation into a liability phase and a damage phase. In an April 10, 1981 order, the court held that between October 17, 1973 and October 17, 1975, the defendants enforced a maternity leave policy in their Kentucky and Tennessee plants that violated Title VII. The court declined to enter injunctive relief since it found that the defendants ceased enforcement of their policy shortly after Wooldridge filed a complaint with the Equal Employment Opportunity Commission (EEOC) in October 1975. The District Court referred the case to a Special Master to "determine what, if any, damages have been suffered by individual members of the class for mandatory maternity leave ... between the dates of October 17, 1973, and October 17, 1975."

At the damage hearings, the class attorneys called individual employees to testify about their damage claims. The magistrate concluded that only 38 of the 131 women who made claims were entitled to awards of backpay. Of the 93 plaintiff class members who were denied backpay, many were placed on maternity leave either before October 17, 1973 or after October 17, 1975. Others had opted out of the class earlier in the litigation. The total amount of backpay awarded was $30,011.42. Subsequent to the filing of the instant appeal, a panel of this Court found

that the magistrate incorrectly placed the burden of proof on the class members to demonstrate that they could work during and immediately following their pregnancy. The panel also determined that the magistrate incorrectly required the members of the class to prove that they had made attempts to mitigate their damages. Accordingly, the panel remanded the case for further proceedings. *Wooldridge v. Marlene Industries Corp.*, 875 F.2d 540 (6th Cir. 1989).[4]

After adopting the magistrate's backpay award, the District Court awarded fees for 1,618.62 of the 1,679.97 hours claimed by attorneys Bertram and Wilson and all of the 1,296.20 hours requested by Barnett & Alagia, plus expenses in the total amount of $293,399.24. No fees were allowed for hours spent on the North and South Carolina cases.[5] The court indicated that Bertram and Wilson's claimed hours were cut because the court had identified additional hours in the itemized bill pertaining to the North and South Carolina cases.

The memorandum accompanying the District Court's order awarding attorneys' fees is fairly brief. The court made the following findings: (1) plaintiff could not recover for work done on the North and South Carolina cases;[6] (2) the motions for attorneys' fees were timely; (3) no enhancement multiplier would be applied to increase the hourly rate; (4) the number of hours claimed for the Kentucky and Tennessee portions of the suit were reasonable;[7] and (5) hourly rates would be set

Carolina cases, a decision which has not been appealed.

**4.** Since the instant appeal was argued, the District Court granted judgment, entered January 12, 1990, awarding backpay to 72 plaintiffs in a total amount more than twice that earlier awarded by the court. Since we do not know whether this award will be the final backpay order entered in this case and since the District Court has not had the opportunity to consider the effect of its increased backpay award on the attorneys' fees question, we express no opinion on the effect of the District Court's decision.

**5.** The attorneys, at the court's direction, had already attempted to eliminate those hours pertaining to the North and South Carolina cases.

**6.** It appears that the court may nonetheless have inadvertently awarded fees for some hours that were in fact spent on the North and South Carolina portions of the case. On remand the District Court may wish to further review the hours claimed by the class attorneys to assure that the award conforms with the court's stated position on the exclusion of hours spent on the North and South Carolina cases.

**7.** On the important issue of the reasonableness of the fees the court made the following findings:

Next the Court finds that the number of hours claimed on the Kentucky and Tennessee claims are reasonable, with exceptions noted herein. The Court has already disallowed the claim for any hours expended on

according to a fee schedule set forth by the court. In setting the hourly rate for attorneys' fees, the court made two assumptions. First, while the court applied a different hourly rate to the hours claimed by Wilson and Bertram, the court assumed that any hours not identified in their joint billing statement could be credited to Bertram at the higher rate. Second, in awarding fees to the firm of Barnett & Alagia, the court assumed without checking the billing statement that all hours claimed were for attorney time. The defendants object to both of these assumptions. The memorandum did not discuss the degree of success achieved by the class or its relevance to the fee award.

The time records indicate that the court awarded fees for all of the time spent litigating the Tennessee and Kentucky claims in the liability phase and all of the individual backpay claims, regardless of their success, in the damage phase. The defendants argue that a portion of these hours should not have been compensated since the time was used to pursue the claims of the plaintiffs who did not prevail.

Additionally, the defendants argue that the attorneys were compensated for a number of hours: (1) that did not contribute to the success ultimately achieved by the plaintiffs; (2) that were not identified in a manner sufficient to determine what work was done; (3) that were excessive in relation to the work accomplished; and (4) that were performed by a person other than an attorney yet compensated at an attorney's hourly rate. Finally, the defendants argue that the District Court abused its discretion in failing to reduce the award for the limited success achieved.

Initially, we recognize that there may be additional attorneys' fees awarded in this case for work performed after remand by

the merits panel. However, the question of whether the fees awarded for certain work done at the time of the instant appeal is not affected by that remand and in the interest of judicial economy should be reviewed at this time. Since we conclude that the District Court has erred in some respects in its award of attorneys' fees, the standards set herein can be applied to future fee awards in this case.

## II. Prevailing Party

■ The defendants initially argue that time spent litigating the individual damage claims of class members who did not receive damages cannot be compensated since these persons are not prevailing parties within the meaning of the attorneys' fees statute. We agree. Determining whether the party prevailed within the meaning of the statute is the threshold question to be answered before granting any attorneys' fees request under the civil rights statutes. While attorneys' fees are generally not available in American courts, Section 706(k) of Title VII, 42 U.S.C. § 2000e–5(k), allows a district court to award fees in Title VII cases. Section 706(k) provides:

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private party.

■ In deciding who is a prevailing party it is not necessary that a party actually receive some form of judicially ordered relief.

A lawsuit sometimes produces voluntary action by the defendant that affords the

the North Carolina and South Carolina claims. With regard to the other claims, although some of the time expended was for questioning potential claimants or other workers, nevertheless, the expenditure of time to take their depositions was not unreasonable, for the conduct of the defendants could be considered as a pattern toward all workers in general. Although counsel expended a great number of hours, one must remember

that this was a class action and that numerous depositions had to be taken on the liability and damages portions of the case. There appears to be no duplication of efforts, although there were two and sometimes three attorneys, representing the plaintiffs. During trial, the prosecution for the plaintiff was handled primarily by Mr. John White and Mr. Bertram, while the defendants had at least two and sometimes three attorneys in court.

plaintiff all or some of the relief he sought through a judgment—*e.g.*, a monetary settlement or a change in conduct that redresses the plaintiff's grievances. When that occurs, the plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor.

*Hewitt v. Helms,* 482 U.S. 755, 760–61, 107 S.Ct. 2672, 2675–76, 96 L.Ed.2d 654 (1987). *See also Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980).[8] Nevertheless, there must be some actual benefit to the plaintiff either in terms of monetary damages, injunctive relief, or a voluntary change in a defendant's conduct. For example, in *Rhodes v. Stewart,* 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988), the court denied the plaintiffs attorneys' fees even though they had obtained a declaratory judgment that the defendants' prison policies were illegal. The Court held that the two plaintiffs had not benefited from the judgment since one had died prior to entry of the judgment and the other had been released from confinement. The Court again emphasized that a judgment "will constitute relief ..., if and only if, it affects the behavior of the defendant towards the plaintiff." *Id.* 109 S.Ct. at 203.

In this case, the only basis for asserting that individual members of the plaintiff class are prevailing parties is the monetary relief they obtain. The District Court declined to enter injunctive relief finding that the policy had been discontinued by October 17, 1975. While the plaintiff argues that the lawsuit prompted the defendants to change their maternity leave policy, the plaintiff's own version of events does not support this. First, Wooldridge did not file

the suit on behalf of the class until January 30, 1976, three months after the policy change. Wooldridge did file her complaint with the EEOC on October 17, 1975, but while the EEOC filing may or may not have prompted the defendants' change in policy,[9] the class action lawsuit filed three months later added nothing.

Backpay awards were not determined on a class-wide basis, but instead were awarded on an individual-by-individual basis after a determination that an individual was in fact harmed by the defendants' illegal maternity leave policy. Therefore we do not believe it appropriate to look to the class as a group to determine whether the plaintiffs have prevailed.[10] A contrary result could force the defendants to compensate the class attorneys for work that did not benefit and was not intended to benefit the class as a group but was for the individual benefit of persons who were not harmed by the policy and who obtained no benefit from the litigation.[11]

Applying these principles to the case at hand, it is clear that the class attorneys should not have been compensated for time spent litigating the damage claims of individual plaintiff class members who have not and ultimately do not receive a backpay award. On remand the District Court should reduce the fees by the time spent litigating those individual claims. This portion of our ruling does not affect the fee award for the liability portion of the litigation since the time spent litigating issues common to the class benefited those who received backpay awards as well as those

---

**8.** It is well established that 42 U.S.C. § 1988 is patterned after § 2000e–5(k). Decisions under § 1988, with a few noteworthy exceptions not applicable to this case, govern decisions under § 2000e–5(k). *Hanrahan v. Hampton,* 446 U.S. 754, 758 n. 4, 100 S.Ct. 1987, 1989 n. 4, 64 L.Ed.2d 670 (1980) (per curiam).

**9.** Other complaints had also been filed against the defendants.

**10.** In cases where group-wide relief is requested or arguably obtained it will usually be appropriate to determine prevailing-party status by considering the certified class as a whole.

**11.** Counsel can still be compensated for the time spent exploring the claims of individual members to the extent exploring these claims was intended to benefit persons who ultimately received an award of backpay. For example, proving that several plaintiffs were required to take maternity leave of the same length may be probative of the existence of an underlying maternity policy. Since the defendants in this case originally denied the existence of a policy, the class attorneys needed to investigate the facts of individual cases to provide evidence of the discriminatory policy's existence in the liability phase of the litigation.

who did not receive backpay.[12] The District Court may ultimately discover that much of the time spent by the attorneys in the damages phase was spent on issues common to both the successful and unsuccessful plaintiffs. To the extent that such time aided or was reasonably calculated to aid the claims of successful plaintiffs it is compensable—even though it may also have been performed to aid those plaintiffs who did not receive backpay. The guiding principle is that the work must in some way have been expended in pursuit of a successful claim for backpay.

The class attorneys argue that failure to compensate them for litigating all of the individual backpay claims of class members—regardless of success—would undermine the Congressional goal to encourage attorneys to take on the cases of meritorious civil rights claimants. Failure to press the claims of all class members would expose them to malpractice suits, they assert. Accordingly, attorneys will choose not to take on class action suits since they could be forced to bear the cost of representing unsuccessful claimants.

While we agree that class attorneys should be adequately compensated, we are also mindful that the statute only provides attorneys' fees for prevailing claimants. A contrary holding could encourage attorneys to spend an unwarranted amount of time litigating the claims of unsuccessful class members. Where a class action format is desirable, we believe our ruling provides adequate incentives for attorneys to take on the representation. In most class action cases, the issues common to the class will predominate, with issues related to individual damage claims forming only a small portion of the suit. Attorneys for a successful class will continue to receive compensation for all portions of the litigation that deal with common issues. Ordinarily most members of a successful class action for damages will receive damages. If individual damage issues predominate and the large majority of claimants are unsuccess-

ful, it may be that a class action format was not totally appropriate for the determination of the claims or the class was not appropriately defined. Finally, where attorneys are faced with such an unusually large risk of not prevailing that the class representative would have difficulty securing counsel, they may be entitled to a risk multiplier on the fees awarded for the successful claims. *See Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 731, 733–34, 107 S.Ct. 3078, 3089, 3090–91, 97 L.Ed.2d 585 (1987) (O'Connor, J., concurring in part and concurring in the judgment).

The outcome would likely be the same even if we were to accept the class as a whole as the prevailing party for the purposes of the attorneys' fee statute. The Supreme Court has held that a prevailing party cannot be compensated for time spent litigating unsuccessful claims to the extent such time is separable. *See Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *see also Foster v. Board of School Comm'rs*, 810 F.2d 1021 (11th Cir.), *cert. denied*, 484 U.S. 829, 108 S.Ct. 99, 98 L.Ed.2d 60 (1987). In this case, the backpay claims of unsuccessful class members in effect constituted separate claims for relief once the case reached the damage phase of the litigation. Similarly, time spent litigating the claims of those persons who were placed on maternity leave prior to October 17, 1985 or those who opted out of the class could not be compensated since these persons were never in the class to begin with. Time spent on these claims is easily separable.

### III. Application of the Lodestar Formula

The defendants also argue that the District Court misapplied the lodestar formula both in failing to determine that the hours claimed were reasonable and in applying inappropriate presumptions to the hourly

---

12. The District Court correctly held that time spent litigating the claims of the North and

South Carolina subclass could not be compen-

rate to be applied to the hours claimed.[13] We agree.

██ This Circuit has set up a three-tier review standard for determining the reasonableness of the requested hours billed by a prevailing party. We apply a clearly erroneous standard when reviewing a district court's determination that a prevailing party has or has not worked the hours the party claims to have worked. We determine whether the District Court erred when reviewing legal questions concerning the relationship of the hours billed to the points on which the party prevailed. We look to see whether the District Court has misapplied the reasonable practices of the profession when determining whether a party used poor judgment in billing the opposing party for hours spent on the case. *Coulter v. Tennessee*, 805 F.2d 146, 150–51 (6th Cir.1986), *cert. denied*, 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987).

██ In order for us to review a case, however, "[I]t remains important ... for the district court to provide a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. A district court should state with some particularity which of the claimed hours the court is rejecting, which it is accepting, and why. Where a party raises specific objections to a fee award, a district court should state why it is rejecting them. Even if the defendant raises objections in a generalized manner, a district court has an obligation to review the billing statement and eliminate those portions of the fee which are unreasonable on their face.[14] Since at least some portion of the attorneys' fees awarded in this case are

inappropriate and the case is being remanded, we leave to the District Court—which has more experience with the day-to-day proceedings in this case—the task of examining most of the objections to the claimed fees raised by the defendants. We do address a few of these objections here in order to provide guidance to the court below.

██ First, we believe the District Court erred in applying a presumption in favor of the plaintiffs where ambiguities in the billing records occurred. "Where settlement [of the fee request] is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id.* Thus it was error for the District Court to presume that the hours not identified as worked by a specific attorney were worked by the highest paid attorney rather than the lowest paid attorney. Similarly, it was error for the District Court to "assume" that all hours claimed by the Barnett & Alagia law firm were "claimed only for the work of attorneys in that firm." If the court had reason to doubt that it was an attorney who billed certain hours, the court should have required additional information from the firm.[15]

██ Second, the District Court erred in not explaining its reason for finding that certain unidentified hours included in the attorneys' billing entries were reasonable. For example, it is impossible to tell what portion of the claimed hours were "excessive, redundant, or otherwise unnecessary," *Id.* at 434, 103 S.Ct. at 1939, when an entry is labeled "general services includ-

---

sated since no members of this class prevailed on any portion of their claims.

**13.** The defendants also attack many of the expenses as unreasonable or not chargeable to the defendants. Though we do not address these claims in our opinion, the defendants are free to raise these claims on remand.

**14.** Ideally, a party should raise objections with specificity, pointing out particular items, rather than making generalized objections to the reasonableness of the bill as a whole. The defendants' failure to raise more than a generalized

objection to the fees in this case would ordinarily require us to review only those items which should have been eliminated through a cursory examination of the bill. Since we are remanding the case for reconsideration of the fee award, we see no reason why the defendants should not be permitted to raise further specific objections.

**15.** Several journal entries appear to bill the defendants for clerical work. Even if the District Court could find that clerical work was properly billable in this case, it could not be billed out at the billable rate of an attorney.

ing PC [phone conversation? ] John White."
Not only must attorneys exclude unnecessary hours from their bill, they must also maintain billing time records that are sufficiently detailed to enable the courts to review the reasonableness of the hours expended. "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Id.* at 437 n. 12, 103 S.Ct. at 1941 n. 12. While the attorneys on remand may be able to demonstrate that these hours were reasonably expended and intended to benefit the prevailing plaintiffs, they have not done so in the submissions we have before us.

■ The defendants object to many of the hours billed by the attorneys on the grounds that these hours did not contribute to the ultimate success achieved by the plaintiffs.[16] We believe that this is an overly stringent standard for awarding fees. The question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed. We leave resolution of the specific claims raised by the defendants for the District Court.

■ The defendants also argue that the attorneys spent too much time preparing and reviewing simple pleadings and court documents.[17] Some charges appear unreasonable on their face. For example, Barnett & Alagia's expenditure of more than

80 hours in 1981 to prepare an application for interim attorneys' fees that included little more than a statement of hours and expenses is clearly excessive. At this stage of the litigation the attorneys had asked for fees on their own motion and did not review their hours to separate those that pertained to the unsuccessful plaintiffs.[18] Preparing this statement should have required little more than transcribing existing time records in the case. While other examples of poor billing judgment appear in the billing statement, we believe the District Court can review these on remand.

## IV. Limited Success

The defendants argue that the District Court should have automatically reduced the attorneys' fees in this case because they far exceed the total award of backpay. The District Court has not considered this question in light of its increase in the backpay award. Accordingly, we do not reach the issue here. We note, however, that the Supreme Court has rejected the argument that attorneys' fees must always be proportionate to the size of a damage award. *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (holding that an award of $245,456.25 in attorneys' fees was not unreasonable merely because the plaintiffs only recovered $33,-350.00 in damages) (no majority opinion). Nevertheless, "[W]hen an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the

---

**16.** The defendants also allege that the District Court, contrary to its prior ruling, compensated the attorneys for time spent litigating the claims of the North and South Carolina plaintiffs. A few of the journal entries do appear to pertain to the North and South Carolina portion of the case. On remand, the defendants are free to point out with specificity the entries, if any, that escaped the District Court's attention.

**17.** Many of the defendants' objections pertain to time expenditures that would not appear to be unreasonable on cursory review but do appear to be unreasonable when pointed out by the

defendants. For example, John R. White claimed to have spent 7.6 hours receiving and reviewing Marlene's two-page response to the plaintiff's motion for a pretrial conference (September 1, 1981) and 5.6 hours the next day preparing a two paragraph response agreeing to a status conference and asking that it be scheduled before the end of the year.

**18.** Of course an attorney may spend additional hours preparing a bill when it is necessary to separate hours spent on unsuccessful claims.

fee awarded and the results obtained." *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

## V. Conclusion

For the foregoing reasons, the order of the District Court is REVERSED and the case REMANDED for further proceedings not inconsistent with this opinion.