**UAW LOCAL 540, et al., Plaintiffs,**

v.

**Lloyd J BARETZ, et al., Defendants.**

Nos. 97–76334, 97–76335.

United States District Court,
E.D. Michigan.
Southern Division.

Dec. 1, 2000.

Michael F. Saggau, UAW International Union, Legal Department, Detroit, MI, Linda O. Goldberg, Miller, Canfield, Ann Arbor, MI, for United Automobile, Aero-space and Agricultural Implement Workers of America Local 540, plaintiffs.

Daniel G. Wyllie, Dykema Gossett, Timothy K. Carroll, Dykema Gossett, Detroit, MI, Robert J. Trizna, Schuyler, Roche, Chicago, IL, for Lloyd J. Baretz, Beaver Precision Products, Incorporated, BVR Liquidating, Incorporated, defendants.

## ORDER ACCEPTING AND ADOPTING MAGISTRATE'S NOVEMBER 2, 2000 REPORT AND RECOMMENDATION

EDMUNDS, District Judge.

This matter came before the Court on the Magistrate's November 2, 2000 Report and Recommendation. The parties filed objections which merely raised the same issues already raised, thoroughly considered, and properly disposed of by the Magistrate. Being fully advised in the premises, having read the pleadings, including the Objections filed by the parties, the Court hereby ACCEPTS and ADOPTS the Magistrate's November 2, 2000 Report and Recommendation. The Court shall not order payment of the audit invoice submitted by KPMG dated December 16, 1999. Defendants' payment of the earlier invoices shall be left undisturbed.

### *REPORT AND RECOMMENDATION*

#### I. *RECOMMENDATION:*

I recommend that the court not order payment of the audit invoice submitted by KPMG on December 16, 1999.

#### II. *REPORT:*

##### A. *Procedural History*

These cases were originally filed on May 9, 1997 and July 3, 1997. They were transferred to Ann Arbor and assigned to District Judge Barbara K. Hackett. Plaintiffs' invoked the jurisdiction of this court

under the Labor Management Relations Act ("LMRA"). They seek to enforce the terms of certain collective bargaining agreements with respect to pension, health care, long term disability and separation benefits. In the wake of discovery disputes, the parties entered into a Stipulation on April 20, 1998, calling for an audit of the books and records of the defendants and other designated persons and business entities. The Stipulation provided that the court would designate an auditor, who would be given full and complete access to all business and financial records of the designated persons and entities "as deemed necessary by the auditor to complete the audit." Judge Hackett approved the Stipulation, and appointed KPMG Peat Marwick ("KPMG") as the auditor. The agreement provided that the audit should be finalized no later than August 1, 1998.

Contrary to the parties' original expectations, the audit process persisted, without the submission of a final report, for more than a year and a half.[1] The delay appears to have resulted from continued disputes over the production of documents by defendants in response to the auditor's requests. Defendants paid the auditor's billing statements, although they expressed dissatisfaction with the lack of detail as to the work performed. Defendants failed, however, to make timely payment of charges reflected in KPMG's statement of September 21, 1999.

In an October 27, 1999, conference with the court, the parties exchanged claims of foot dragging in the audit process, and continued their dispute over the auditor's document requests. Defendants' counsel challenged the competence of the auditor's services, and specifically complained of the lack of detail in their billing statements. The court ordered immediate payment of the September 21, 1999 statement, and

further declared that she would not order the payment of any future invoices which lacked sufficient detail. (Docket entry # 284). On November 23, 1999, in view of settlement efforts then underway, the court ordered "KPMG" to refrain from any further activities relating to the audit until further direction from the court. The same Order directed defendants for the second time to provide immediate payment to KPMG for audit services reflected in its invoice of September 21, 1999, and indicated that the court would review the appropriateness of KPMG's previous invoices at an unspecified later date. Defendants complied with the order.

On December 16, 1999, KPMG submitted to defendants an invoice in the amount of $29,600.00, for services rendered during the period from September 15, 1999 through November 23, 1999. Defendants failed to pay the invoice, and KPMG sought the assistance of the court (Judge Hackett) in a letter of March 15, 2000. A similar letter was addressed to Judge Edmunds on March 28, 2000. This court entered a Briefing Order directing KPMG to file a more detailed description of the services billed on the December 16, 1999 invoice, and setting dates for defendants' objections and KPMG's responses. KPMG filed documents in support of its statement on August 4, 2000. Defendants filed timely objections on August 11, 2000. The matter was assigned to me for review in an Order of Reference on August 28, 2000.

### B. *Analysis:*

 As observed by defendants' counsel in his letter to the court of August 11, 2000, the reported cases dealing with court review of fee requests usually deal with attorneys' fees. The broad principles

---

**1.** A Preliminary (Non-final) Report was submitted on October 29, 1998. Thereafter, KPMG billed an additional $45,386.00, exclusive of the $29,600.00 statement in issue here.

enunciated, however, apply with equal facility to the review of accountants' or auditors' fee requests. It is appropriate at the outset to state the general concepts which govern a court review of a fee petition.

■ A fee claimant bears the burden of providing the court with a particularized billing record. *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir.1991); *Wooldridge v. Marlene Industries Corporation*, 898 F.2d 1169, 1176 (6th Cir.1990). The court is charged with reviewing the time records and other supporting documents of the claimant with an eye to disallowing those hours which are excessive, unnecessary, duplicative, or insufficiently documented. *Beamon v. City of Ridgeland, Mississippi*, 666 F.Supp. 937, 941 (S.D.Miss.1987). The court is not required to wade through voluminous time records in an attempt to rescue compensable time from a sea of non-compensable time. Thus, a fee request may be reduced if time records are vague, sloppy, imprecise, or not sufficiently detailed to allow meaningful review. *Wooldridge*, 898 F.2d at 1176, *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998).

■ Fee applicants must exercise billing judgment. A request for fees should not result in a second major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 439, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Fee applicants must exclude "excessive, redundant or otherwise unnecessary hours which are hours that would be unreasonable to bill a client and therefore to one's adversary irrespective of the skill, reputation or experience of [the applicant]." *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir.1999).

> If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are "excessive, redundant or

otherwise unnecessary." Courts are not authorized to be generous with the money of others, and it is as much the duty of the courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.

*Id.* Ideally, such billing judgment should be reflected in the fee application by a showing of hours redacted in determining a fair compensation. *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir.1990).

■ Deciding what is a reasonable amount of time to spend in rendering professional services in support of litigation is an imprecise undertaking, and calculations will necessarily be rough. *American Petroleum Institute v. EPA*, 72 F.3d 907, 915–16 (D.C.Cir.1996). This is particularly true where the fee applicant employs "block billing," in which all tasks performed on a given day are lumped together, without allocation of precise amounts of time spent on each particular task. While the court should state which of the claimed hours it accepts, and which it rejects, and should provide reasons for each determination, it is not required to identify and justify each disallowed hour, or to announce what specific hours are permitted for each task. *Case v. Unified School District No. 233, Johnson County, Kansas*, 157 F.3d 1243, 1250 (10th Cir.1998).

In this case, the auditor's obligation to submit specific billing statements was addressed in Judge Hackett's Order following the October 27, 1999, status conference. On November 10, 1999, the court ordered defendants to pay KPMG's invoice of September 21, 1999, despite their complaints about the lack of a detailed description of the work performed. As to future invoices, however, she ordered the auditor's to submit a detailed description of the work performed. The court declared that no order would issue for the payment of

future billings which lacked sufficient detail.

■ KPMG committed, in its November 22, 1999 letter to Judge Hackett, that it would include a "summary level detail" of the hours listed on future invoices. A two page document summarizing the hours billed on December 16, 1999, was submitted with KPMG's letters to the court on March 15 and 28, 2000, and was also attached as "Exhibit C" to KPMG's August 4, 2000, submission to the court. Although the exhibit does apportion the billed time to particular dates on which each auditor performed services, the time is recorded in whole hour increments, as to which very general work descriptions are assigned (e.g. "preparation and review of draft requests for defendants' production of documents, correspondence, meetings and conference calls."). Such block billing provides no real basis for determining the precise time dedicated to any particular task. In addition, whole hour time increments are unusual in my experience. I find it unlikely that professional services totaling 115 hours were rendered in neat 60 minute segments. The December 16, 1999, billing is so vague as to warrant the concern expressed by Judge Hackett that there were a number of persons who were "making a career" out of the audit. (November 23, 1999 Telephone Conference, p. 14). The court clearly expressed concern that KMPG's billings "really don't tell us anything about what they're doing," but merely identified persons who had contributed hours on the project. (Id., p. 20–21). It was Judge Hackett's plainly stated intention that future billings would require detailed summaries of work performed. (Id. at p. 22). I do not find that KPMG's summary complies with Judge Hackett's directive.

It is important to note that this court, in its July 27, 2000, Briefing Order, directed KPMG to file a more detailed description of the December 16, 1999, audit invoice. KPMG's August 11, 2000, submission, however, adds nothing to its earlier summary, beyond attorney time sheets for 35 of the 115 billed hours, which add nothing in the way of a description of the services provided.[2] KPMG has simply failed to provide the detail necessary to meaningful review of its fee claims under the standards established in the reported cases.

■ Another troubling aspect of the December 16, 1999, invoice lies in KPMG's declaration in the March 15 and 28, 2000, letters that the fees billed "principally reflect time spent in developing a comprehensive request for documents, as requested by both parties." By September 1999, the auditors were in their seventeenth month of an audit originally intended to be completed in slightly more than two months. The long delay was the result of the inability of KPMG to secure the full and complete access to the documents it deemed necessary to complete its task. While reasonable effort to negotiate access to disputed materials is fully appropriate, I find it unreasonable that, after seventeen months of effort, the auditor would devote virtually all of 115 hours during a ten week billing period to negotiating access to materials needed to perform its essential mission. It should have been obvious to all concerned by that time that the audit stipulation had broken down, and that direct court intervention in the discovery process was required. In fact, KPMG's October 27, 1999, letter to Judge Hackett revealed its "serious concerns" regarding its ability to complete the audit assignment and suggested that the court make substantial

---

2. The applicant reports that the time records for Mr. Bennett (80 hours) during the relevant time period could not be located.

changes in its assignment, or relieve it of further responsibilities. Those serious concerns should have been addressed to the court long before the auditors devoted an additional 115 hours to fruitless negotiation with defendants.

The current Briefing Order relates solely to the December 16, 1999, audit invoice, and I interpret the subsequent Order of Reference to address only to that subject. Judge Hackett did, however, indicate that the court would, at some point, examine the other bills submitted by KPMG as well. Although the parties have not submitted all of the earlier audit invoices, some consideration of those billings may be appropriate at this point.

In a letter to the court on August 11, 2000, Robert J. Trizna, counsel for defendants, represented that they have paid $157,926.00 to KPMG for work performed since the April 20, 1998 audit stipulation. In a subsequent letter, on August 23, 2000, Mr. Trizna enclosed copies of five billing statements covering the periods from June 13, 1998 through July 10, 1998, and from September 19, 1998 through September 14, 1999. Those statements totaled $96,596.47. I presume that the remaining $61,329.53 was paid in response to billings for the periods from April 20, 1998 through June 12, 1998 and from July 11, 1998 through September 18, 1998, for which no statements were provided to the court. Unfortunately, all of the invoices submitted exhibit the same lack of detail as the billing of December 16, 1999, and no meaningful analysis of the work performed is possible.

In the absence of detailed billing statements, it is impossible to determine whether the hours charged to the audit project were reasonable in number and productivity. In a letter to Judge Hackett on No-

vember 22, 1999, KPMG reported that it did not maintain a detailed record of time expended prior to a June 23, 1999, letter from Mr. Trizna, in which he requested that future invoices provide a breakdown of services rendered on a daily basis by task(s) performed and the hours devoted to each task by each individual performing services.[3] Notwithstanding the defendants' requests for specificity, it appears that KPMG continued to submit non-detailed billings. KPMG's (Jeff Litvak's) letter of November 22, 1999, did commit, "going forward," to include "a summary level of detail of the hours listed on all future invoices." As stated above, however, the summary detail is still insufficient to support meaningful review.

Defendants' counsel concedes in his August 11, 2000, letter that KPMG personnel reviewed and catalogued over 80,000 pages of documents from Beaver Precision Products, Inc., primarily during the period from June through September, 1998. That work provided the basis for the findings reflected in the preliminary report of October 1998. That auditing work most certainly required extensive time and effort. A substantial amount of auditor time, however, appears to have been expended, even in those early stages, in fruitless attempts to secure access to a greater number and range of documents than defendants were willing to produce. During the status conference of November 23, 1999, plaintiffs' counsel concurred with KPMG's charge that the defense was "stonewalling", and emphasized that previous court orders directing production of documents by defendants had not been obeyed. In response, defense counsel complained of excessively intrusive document requests, incompetence and inatten-

---

**3.** In fact, Mr. Trizna's client, Loyd J. Baretz, had made a similar request in a letter to KPMG on May 5, 1999.

tion on the part of KPMG in regard to its audit responsibilities. Both parties discussed KPMG's efforts to develop a comprehensive document request stating what records were necessary to complete the audit.

 The audit stipulation, which was sought and signed by defendants, provided that the auditors would be given "full and complete access" to the records of the designated persons and business entities "as deemed necessary by the auditor to complete the audit." In view of their commitment to satisfy the auditor's requests for documents, and their payment of the invoices for time expensed by KPMG in efforts to exercise the discretion granted in the stipulation, I find little justification to second guess the auditor's billings for the period from April 20, 1998 through September 14, 1999. KPMG was selected by the court pursuant to defendants' written commitment to supply information upon request. I am disinclined to recommend that the auditors be further penalized, after the fact, for devoting substantial time to securing the documents they considered essential to completing their primary task. The issue of document production should have been brought earlier and more clearly to the court's attention, and the court should have dealt more decisively with the inability of KPMG to secure the information necessary to the timely completion of its undertaking. Nonetheless, it is clear that the auditors did make detailed document requests, and that defendants refused to honor them. The defendants could also have sought court intervention at any time to terminate the audit process and return to open discovery by plaintiffs. It appears, however, that they were content to string out the audit with protracted negotiation and renegotiation of KPMG's requests. Billings were submitted on a regular basis, so defendants were kept apprised of the cost of that tactic. I find little reason to relieve them of the expense occasioned by their own intransigence. I am satisfied that KPMG made a good faith effort to complete the mission assigned to it by the court. Prior to the court's order of November 10, 1999, they were not specifically charged with the obligation to provide a detailed description of their work in the monthly invoices. Because the auditor's billing statement of December 16, 1999, fails to meet that obligation, I recommend that it not be ordered paid. I would further recommend, however, that defendants' payment of the earlier statements be left undisturbed.

## III. *NOTICE TO PARTIES REGARDING OBJECTIONS:*

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.1991). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Federation of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987), *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the

Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.