NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0252n.06

Nos. 20-1706/1707

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| RONECA ECHOLS, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | May 25, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| EXPRESS AUTO, INC., | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE: WHITE, NALBANDIAN, and READLER, Circuit Judges.**

**CHAD A. READLER, Circuit Judge.** Express Auto sells and finances the sale of used motor vehicles. Roneca Echols, an aspiring customer, brought an action against Express asserting violations of the Equal Credit Opportunity Act. The parties settled for $10,000. Echols then sought attorney's fees and costs, the issues that eventually gave rise to this appeal. The district court awarded Echols $76,795 in attorney's fees and $2,125 in non-taxable costs. Seeing no abuse of discretion in that award, we affirm.

I.

On several occasions, Roneca Echols failed to secure financing through Express to purchase a motor vehicle Express offered for sale. Those failures prompted Echols to file suit alleging that Express violated the Equal Credit Opportunity Act (ECOA) in two respects: one by failing to properly notify Echols that she was denied credit, and another by allegedly discriminating against Echols based on her marital status. *See* 15 U.S.C. § 1691 *et seq*. The filing precipitated

some early sparring between the parties, with Echols unsuccessfully seeking a lofty settlement award and Express being less than forthcoming during discovery. Ultimately, the parties reached a settlement. Express agreed to pay Echols $10,000 in exchange for a release from the claims asserted in the complaint.

Following the entry of a consent judgment, the district court permitted Echols to petition for attorney's fees in accordance with the ECOA's attorney's fees provision. *See* 15 U.S.C. § 1691e(d); *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001) (noting that a prevailing party includes one who prevails through a settlement by entry of a consent decree). Echols sought attorney's fees and non-taxable costs totaling $82,395. Express responded primarily by arguing that the requested amount was grossly disproportional to the recovery, and that the fee award should be limited to one third of the settlement amount, which Express assumed (incorrectly) was the fee arrangement Echols had with her counsel. Express also argued that the proposed hourly rates were too high and that the hours claimed were excessive. At the close of a hearing to address the fees petition, the district court explained that Express's primary argument was "troubling" in that it "clearly ignore[d] the statutory fee shifting provisions and the purposes behind these kinds of statutes," as well as binding caselaw. The court also criticized Express for asserting, contrary to Supreme Court precedent, that paralegal time was categorically unable to be compensated, an objection Express then withdrew. After reducing one of Echols's attorneys requested hourly rate, the district court found that the fees sought were reasonable and awarded Echols $76,795 in attorney's fees and $2,125 in non-taxable costs. In a timely appeal, Express argues that the district court abused its discretion by failing to adequately explain its fees award and by awarding non-taxable costs. (The district court denied a second motion seeking taxable costs pursuant to 28 U.S.C. § 1920, an issue not raised in this appeal.)

II.

One hallmark of the American judicial system is the practice of parties to a lawsuit bearing their own attorney's fees and costs. In some settings, however, Congress has altered that traditional practice by statute. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). One such example is § 1691e(d) of the ECOA. There, Congress instructed that when a party prevails under specific sections of the ECOA, "the costs of the action, together with a reasonable attorney's fee as determined by the court, shall be added to any damages awarded by the court under such subsection." 15 U.S.C. § 1691e(d).

A perhaps more well-known example of Congress's altering of the custom of bearing one's own legal fees is 42 U.S.C. § 1988(b), through which Congress authorized district courts to award reasonable attorney's fees to a prevailing party in various forms of civil rights litigation. Most federal fee-shifting statutes mirror the language of § 1988(b)—including, in many respects, the ECOA. *Compare* 42 U.S.C. § 1988(b) (authorizing the recovery of "a reasonable attorney's fee"), *with* 15 U.S.C. § 1691e(d) (authorizing the recovery of "a reasonable attorney's fee"). As a result, courts have often borrowed from § 1988(b)'s jurisprudence when analyzing related fee-shifting statutes. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 562 (1986) (noting there are over 100 separate statutes providing for attorney's fees, nearly all of which require that the attorney's fee must be "reasonable"); *Hensley*, 461 U.S. at 433 n.7 (explaining that "the standards set forth in [*Hensley*] are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'"). We see no reason to deviate from that approach in applying § 1691e(d).

Following the lead of cases interpreting § 1988(b), we note the party seeking an attorney's fees award under § 1988(b) bears the burden to demonstrate why its fee request is reasonable. *See*

*Hensley*, 461 U.S. at 437. To do so, a fee petitioner must submit documentation "supporting the hours worked and rates claimed." *Id.* at 433. To measure whether a party's attorney's fees request is reasonable, a district court customarily begins by calculating the party's "lodestar" amount. *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). The lodestar amount is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," which courts presume to be a reasonable fee award. *Id.* (quoting *Hensley*, 461 U.S. at 433). The lodestar calculation's goal is to provide an amount adequate to attract competent counsel while avoiding a windfall for those counsel. *See Blum v. Stenson*, 465 U.S. 886, 897 (1984). To arrive at that figure, the district court determines both the number of hours the prevailing attorneys "reasonably expended" on the case as well as the reasonable hourly rates based on the "prevailing market rate in the relevant community." *Rivera*, 477 U.S. at 568; *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) (quoting *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349–50 (6th Cir. 2000)).

After the initial lodestar calculation, a district court has discretion to adjust that amount based on "relevant considerations peculiar to the subject litigation." *Adcock-Ladd*, 227 F.3d at 349. Those considerations may include, among other things, the factors first articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). Included in the 12 *Johnson* factors are the time and labor required to litigate the case, the results obtained by counsel, counsel's experience, whether the case is undesirable (for example, because any potential for recovery is small), and the existence of fee agreements between the plaintiff(s) and counsel. *Id*. at 717–19. "[N]o one factor," however, "is a substitute for" the lodestar method. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989).

III.

When issuing an attorney's fees award, a district court, to allow for appellate review, should provide at least "a concise but clear explanation of its reasons for the fee award." *Hensley*, 461 U.S. at 437. The length of that explanation will likely turn on the case's complexity and duration. In all instances, however, the court "should state with some particularity which of the claimed hours the court is rejecting, which it is accepting, and why." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997) (quoting *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990)). Assuming the district court has made a particularized assessment, we afford that assessment "substantial deference," *Waldo*, 726 F.3d at 821, and review the ultimate award only for an abuse of discretion, *see Ne. Ohio Coal. for the Homeless v. Sec'y of Ohio*, 695 F.3d 563, 569 (6th Cir. 2012). That is, we ask whether the court "relie[d] on clearly erroneous findings of fact," "improperly applie[d] the law," or "use[d] an erroneous legal standard." *Minor v. Comm'r of Soc. Sec.*, 826 F.3d 878, 882 (6th Cir. 2016); *see also U.S. Structures, Inc.*, 130 F.3d at 1193 (explaining that remand is appropriate where the district court "provides no elaboration and makes no finding that the hours expended were reasonable, or that the hourly rates were customary"). With these principles in mind, we consider Express's arguments as to why the district court's award of $76,795 in fees (for 247.50 hours worked) as well as its award of $2,125 in non-taxable costs was in error.

A. Attorney's Fees

*Number of hours.* We begin our review of the district court's lodestar analysis by considering the number of hours Echols's attorneys "reasonably expended" on the litigation. Echols submitted detailed time entries for every one-tenth of an hour for which her counsel sought compensation. In assessing the reasonableness of that submission, the district court acknowledged

that Echols's attorneys exercised their billing discretion by reducing their total bill time from 284 hours to 247.50 hours, resulting in a 12.85% reduction. The district court was also influenced by its finding that Express resisted "all or at least many aspects of discovery, including disclosure of its own documents and witnesses." As reflected in Echols's billing records, that resistance, the court found, resulted in increased efforts by Echols to secure discovery, adding to the total hours billed to the matter. Taking in "all of the circumstances," the district court found the 247.50 hours reasonably expended.

Express takes issue with that conclusion. Its primary response is that the district court failed to address Express's objections or "delineate[] the hours which it was accepting, which it was rejecting, and why." For support, Express points us to our opinion in *Smith v. ServiceMaster Corp.*, 592 F. App'x 363 (6th Cir. 2014). In *Smith*, we held that the district court failed to provide an adequate explanation for its fees award, in part because the court did not to address the opposing party's objections. *Id.* at 373. "Where a party raises specific [non-frivolous] objections to a fee award," we explained, "a district court should state why it is rejecting them. Even if the defendant raises objections in a generalized manner, a district court has an obligation to review the billing statement and eliminate those portions of the fee which are unreasonable on their face." *Id.* (quoting *Wooldridge*, 898 F.2d at 1176). Express contends that it raised specific, non-frivolous objections to Echols's fee petition including its objections to billing entries and rates, which, it says, the district court did not properly consider or address.

While there is perhaps some truth to that allegation, there is also some fault at the feet of Express with respect to how it handled its objections. Starting with the district court, as there is "no precise rule or formula" for determining the number of hours reasonably expended as part of a lodestar calculation, district courts must employ some measure of discretion and judgment in

making that assessment. *Hensley*, 461 U.S. at 436–37. And in doing so, district courts need not double as "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Rather, the court's role is to achieve "rough justice," "tak[ing] into account [the court's] overall sense of [the] suit." *Id.* Here, the district court did as much, emphasizing, among other things, that Echols presented extensive documentation of her attorneys' hours dedicated to securing discovery in light of Express's resistance, which helped demonstrate the reasonableness of the overall fee request.

Having set out the district court's duties and obligations, we now to turn to Express. With respect to calculating whether Echols's hours attributed to the litigation were reasonable, once Echols presented her particularized billing records, Express was obligated to make its objections known to the district court. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008); *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991). As a matter of quantity, Express undoubtedly met that obligation: it marked as objectionable nearly 600 billing line-items on Echols's billing statements. But as a matter of quality, Express was at times rather cursory in how it articulated those objections. Express created a legend designating each of its line-item objections as falling into one of the following four categories: "paralegal work," "not recoverable," "duplicative," or "excessive." Beyond those fairly general labels, however, Express added only selective bits of reasoning and argument in support of its objections. In the absence of a more detailed explanation, the district court was not required to parse Express's nearly 600 boilerplate objections in an in-depth, line-by-line manner. *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161–62 (1990) (noting fee-shifting statutes, like § 1988, "favor[] treating a case as an inclusive whole, rather than as atomized line-items"). Categorizing, as Express did, is helpful in some respects, in that it begins to inform a court's decisionmaking as to the fee award. And Express, we add, was not required to put forward a detailed legal argument as to each individual objection. But in this

case, Express could have done far more than, with a handful of exceptions, attaching only fairly generalized labels as a basis for its objections. A more developed argument would have better explained the reasons why each of those labels applied to individual or categories of entries, better framing Express's objections for the district court. *See Imwalle*, 515 F.3d at 553 ("[C]onclusory allegations that the award was excessive and that . . . counsel employed poor billing judgment . . . do not suffice to establish that there was error . . . ." (ellipses in original) (quoting *Perotti*, 935 F.2d at 764)).

To be sure, Express did make a handful of more specific objections to Echols's billing entries. For example, Express noted that multiple attorneys representing Echols performed similar tasks, such as attending the same deposition. Whether that amounts to unreasonable billing is likely a case-by-case determination. *See, e.g.*, *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 704–05 (6th Cir. 2016) (finding billing for multiple attorneys at the same proceeding not to be duplicative or excessive). In this case, the district court may have been influenced by the fact that Express also had two attorneys billing for the same tasks. *See id.* at 713 n.11 (suggesting that to demonstrate unreasonableness, the party objecting to the award should contrast its time expended by its attorneys to that of the prevailing party's attorneys). Under the circumstances, the decision to allow these entries as part of a reasonable fee request was not an abuse of discretion. *Id.* at 704.

Express also challenged time attributed by Echols to an unsuccessful motion to disqualify one of Express's attorneys due to a purported conflict of interest. But fee-shifting statutes allow courts to "compensate the plaintiff for the time [her] attorney reasonably spent in achieving the favorable outcome, even if 'the plaintiff failed to prevail on every contention,'" so long as the work performed was "expended in pursuit of the ultimate result achieved." *Fox*, 563 U.S. at 834

(quoting *Hensley*, 461 U.S. at 435). While the district court found no merit to Echols's motion to disqualify, it was equally free to construe the time expended on the motion as a reasonable "pursuit of the ultimate result." *Id.*

In addition, Express challenged in detail time billed by paralegals. Express initially objected that paralegal time was not compensable across the board, an objection the district court rejected, and one that Express has now abandoned on appeal. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989) (holding that reasonable attorney's fees includes the costs of paralegals' time). Switching gears, Express also characterized many of the paralegal entries as purportedly reflecting "administrative" or "clerical" tasks that should not be part of a reasonable fee calculation. But Express cited no authority to support this proposition. The Supreme Court, moreover, has held that a reasonable attorney's fee includes the work product of attorneys and paralegals as well as that of those who support an attorney's work product. *Id.* And while it may be the case that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them," *id.* at 288 n.10 (citing *Johnson*, 488 F.2d at 717), the district court maintains the discretion to determine a reasonable paralegal rate, and determine whether certain tasks are compensable, as it did here, *see id.* at 285–87.

At day's end, we fail to see how the district court abused its discretion. While the court did not offer precise reasoning as to its grounds for rejecting each one of Express's nearly 600 legend-based objections, it did provide a concise yet clear explanation for its fee award. That approach satisfies governing precedent, including our own. *Smith* did not require the district court to evaluate with particularity every objection to a fee award; it merely reiterated that a court must not ignore core objections and must provide a clear and concise explanation for its award. 592 F. App'x at 372. Here, the district court addressed Express's core arguments, and the absence of

more detailed objections from Express coupled with Echols's detailed billing records leads us to conclude that the district court's analysis was a sufficient exercise of its discretion.

*Hourly rates.*  Express also contests the district court's conclusion that the hourly rates in Echols's fee agreement were reasonable.  We afford a district court "broad discretion to determine what constitutes a reasonable hourly rate."  *Ohio Right to Life Soc'y, Inc., v. Ohio Elections Comm'n*, 590 F. App'x 597, 601 (6th Cir. 2014) (quoting *Wayne v. Vill. of Sebring*, 36 F.3d 517, 531–32 (6th Cir. 1994)).  The goal is to "produce[] an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).  In determining a reasonable hourly rate, district courts generally look to the prevailing market rate, *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004), that is, the rate at "which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record," *Adcock-Ladd*, 227 F.3d at 350.

Largely at Express's prompting, the district court utilized Echols's fee agreement with her counsel to determine the appropriate hourly rate in making its lodestar calculations.  The fee agreement revealed both a one-third contingency fee arrangement and an hourly fee schedule.  That fact may seem unusual, at first blush, although we have previously said that these two means for determining an attorney's fee can harmoniously exist.  *See Tyson v. Al Chami*, 659 F. App'x 346, 348 (6th Cir. 2016) ("[T]aking cases on contingency and having an hourly rate are not mutually exclusive.").  Either way, as part of the lodestar analysis, courts customarily need to assess an attorney's hourly rate irrespective of a contingency fee agreed to by the parties.  *See Blanchard*, 489 U.S. at 93 ("Should a fee agreement provide less than a reasonable fee calculated [under the lodestar method], the defendant should nevertheless be required to pay the higher amount.  The

defendant is not, however, required to pay the amount called for in a contingent-fee contract if it is more than a reasonable fee calculated [under the lodestar method].”); *Murphy v. Vaive Wood Prods. Co.*, 802 F. App’x 930, 937 (6th Cir. 2020) (noting our prior holding “that a contingency fee agreement may not be ‘the basis for a *downward* adjustment from an otherwise reasonable rate’” (quoting *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 438 (6th Cir. 1999))).

With that objection in mind, and at the parties’ direction, the emphasis in the district court was on the hourly rates appropriate for counsel. The rates set forth in Echols’s fee agreement ranged from $100/hour for paralegals to $450/hour for the most senior attorney. Echols’s “private fee arrangement, standing alone, is not dispositive,” but its presence nonetheless “may aid in determining reasonableness.” *See Blanchard*, 489 U.S. at 93. Utilizing the fee agreement as a starting point, the district court denied Echols’s request for an increase in rate from $450/hour to $500/hour. *See Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995) (explaining that one shortcut in determining the market rate is to look if the “attorney requesting fees has well-defined billing rates”). At the same time, the district court concluded that a $450/hour rate was reasonable in light of the undesirability of this type of case (given that any potential recovery was likely to be modest) as well as the fact that Echols’s counsel “devoted his time and his efforts to develop an expertise in this area.” *See Johnson*, 488 F.2d at 718–19 (noting the undesirability of the case and the attorneys’ experience are two factors to consider in determining a reasonable fee award).

The district court, it bears noting, did not take the customary approach of relying on market data to determine the prevailing market rate, at least not explicitly. *See Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 618–19 & 619 n.6 (6th Cir. 2007) (relying on state bar surveys); *Waldo*, 726 F.3d at 822 (same). But a deviation here was perhaps justified by the fact that Express, as to the $450/hour rate, failed to make any specific objection to that rate before the district court.

Accordingly, we will not pass on Express's more fulsome challenge to the $450/hour rate raised for the first time on appeal. *See Frye v. CSX Transp., Inc.*, 933 F.3d 591, 602 (6th Cir. 2019) (noting arguments not properly raised before the district court are not preserved for appeal (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008))).

On the other hand, Express did preserve its challenge to the rate of $300/hour for one of Echols's attorneys, a challenge accompanied by reliance on market data. On appeal, however, it is unclear whether Express has maintained that challenge, as it focuses only on the $450/hour rate. In any event, while that (albeit out-of-date) market data suggested a lower rate would be appropriate, district courts may approve higher hourly rates if they are warranted. *See Glover v. Johnson*, 934 F.2d 703, 716–17 (6th Cir. 1991) (affirming the district court's award of a higher-than-average rate where counsel's experience and qualifications merited the increased rate). Here, the district court noted counsel's experience and relied on the pre-existing fee agreement in finding the rate to be reasonable. As that pre-existing rate can "reflect the ordinary market rate for private attorneys of similar reputation and experience in the community," *Hadix*, 65 F.3d at 536, we will not second guess the district court's findings.

All told, we see no abuse of discretion in the district court's hourly fee calculations.

### B. Costs

Express next contests the district court's award to Echols of $2,125 in non-taxable costs. Here, Express emphasizes that because the district court found that the parties agreed to bear their

own 28 U.S.C. § 1920 taxable costs, the court erred in awarding to Echols non-taxable costs associated with the award of attorney's fees.

By way of background, two separate sources of authority permit a district court to award out-of-pocket litigation costs to prevailing parties. *Northcross v. Bd. of Educ. of Memphis City Schs.*, 611 F.2d 624, 639 (6th Cir. 1979), *abrogation on other grounds recognized by L & W Supply Corp. v. Acuity*, 475 F.3d 737, 739 & n.6 (6th Cir. 2007). First, as part of an attorney's fees award pursuant to federal fee-shifting statutes, district courts may award "those 'incidental and necessary expenses incurred in furnishing effective and competent representation.'" *Waldo*, 726 F.3d at 827 (quoting *Northcross*, 611 F.2d at 639). Second, 28 U.S.C. § 1920 (Taxation of costs) allows the district court to award certain costs. *See Northcross*, 611 F.2d at 639. Those taxable costs represent amounts "incurred by a party to be paid to a third party, not the attorney for the case, which cannot reasonably be considered to be attorney's fees." *Id.* And they are limited to those items enumerated in the statute, which includes docket fees and fees for clerks, marshals, transcripts, printing, witnesses, exemplification, experts, and interpreters. *See* 28 U.S.C. § 1920.

In the district court, Echols sought to recover expenses pursuant to both 15 U.S.C. § 1691e(d) and 28 U.S.C. § 1920. As to the former, it bears noting that the parties' settlement agreement as well as the consent judgment entered by the district court provide for the recovery of reasonable attorney's fees pursuant to § 1691e(d). Settlement Agreement, R.48-1, PageID.556 ("That consent judgment will provide that the Court will determine amount of reasonable attorney's fees pursuant to the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq."); Consent Judgment, R.48-1, PageID.561 ("[T]he Court will determine 'reasonable' fees."). Because an award of attorney's fees naturally includes reasonable out-of-pocket expenses normally charged

to a fee-paying client, we see no error in the district court awarding Echols $2,125 in non-taxable costs as part of her § 1691e(d) attorney's fee award. *See Northcross*, 611 F.2d at 639.

The parties' settlement agreement, we note, states that "[e]ach party agrees to bear their own fees and costs in the Litigation and waives any right to recover those fees and costs from the other side or their attorneys." Because costs and fees are otherwise left undefined in that agreement, Express argues that this bar on awarding costs should be read to prevent the district court from awarding any costs, including those associated with an award of attorney's fees in accordance with § 1691e(d).

But the costs seemingly waived in the settlement agreement are limited to those recoverable pursuant to § 1920. The language of the consent judgment confirms our understanding by providing for an award of attorney's fees under § 1691e(d)—which would naturally include related costs—without including a provision allowing for the recovery of § 1920 costs, something that is likely prohibited by the settlement agreement. We thus find no abuse of discretion in the district court's awarding Echols $2,125 in non-taxable costs in accordance with § 1691e(d).

We affirm.

**NALBANDIAN, Circuit Judge, concurring.** I concur in the majority's opinion. I write briefly to emphasize that it behooves a party challenging a fee application to marshal evidence in support of its objections.

When a prevailing party submits evidence of the appropriate fee—like detailed records of time entries—simple "conclusory allegations that the award was excessive and that plaintiff's counsel employed poor billing judgment . . . do not suffice to establish that there was error." *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991).[1] Rebuttal evidence may include expert testimony, though it is not always required. Robert L. Rossi, *Expert testimony, 2 Attorneys' Fees* § 13:14 (3d ed. 2020). But without any evidence contradicting the claimed fees, a party is left to argue about "portions of the fee which are unreasonable on their face." *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 367 (6th Cir. 2014) (quoting *Wooldridge v. Marlene Indus. Corp.,* 898 F.2d 1169, 1176 (6th Cir.1990)).

Here, Express Auto presented no evidence to support most of its objections, which, as the majority opinion lays out, were mostly generalized assertions.[2] To begin any serious dispute of the fee award, Express Auto needed more than that. I concur in affirming the district court.

---

[1] *See also Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984) ("As noted above, petitioner failed to submit to the District Court any evidence challenging the accuracy and reasonableness of the hours charged . . . or the facts asserted in the affidavits submitted by respondents' counsel. It therefore waived its right to an evidentiary hearing in the District Court."); Mary Frances Derfner & Arthur D. Wolf, *2 Court Awarded Attorney Fees* ¶ 18.22 (2020) ("Once the fee movant has documented an hourly rate, the fee opponent must 'rebut [that documentation] by equally specific countervailing evidence.'") (alteration in original) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982)).

[2] Express Auto attached a copy of the settlement agreement, the billing records that Plaintiff submitted with markings, and a copy of a 2017 state bar report regarding attorney rates.